# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EXECWARE, LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 14-233-LPS |
| BJ'S WHOLESALE CLUB, INC., | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| EXECWARE, LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 14-234-LPS |
| BLUE NILE, INC., | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| EXECWARE, LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 14-235-LPS |
| BUY.COM INC., | : | |
| Defendant. | : | |

|  |  |  |
|---|---|---|
| EXECWARE, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 14-240-LPS |
| | : | |
| NORDSTROM, INC., | : | |
| | : | |
| Defendant. | : | |

# MEMORANDUM ORDER

WHEREAS, Magistrate Judge Burke issued a 41-page Report and Recommendation (the "Report") (D.I. 24),[1] dated July 15, 2015, recommending denial of Defendants BJ's Wholesale Club, Inc., Blue Nile, Inc., Buy.com Inc., Dollar General Corp., and Nordstrom, Inc.'s (collectively, "Defendants") motions to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which argue that U.S. Patent No. 6,216,139 (the "'139 patent") is directed to non-patent-eligible subject matter under 35 U.S.C. § 101 ("Motions") (D.I. 8; C.A. No. 14-234 D.I. 8; C.A. No. 14-235 D.I. 9; C.A. No. 14-236 D.I. 9;[2] C.A. No. 14-240 D.I. 8);

WHEREAS, on August 3, 2015, Defendants objected to the Report ("Objections") (D.I. 25; C.A. No. 14-234 D.I. 26; C.A. No. 14-235 D.I. 19; C.A. No. 14-240 D.I. 27), and specifically objected to (1) the conclusion under step 1 of the framework set forth in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014), that the asserted claims are not directed at an abstract

---

[1]Unless otherwise specified, all docket citations are to C.A. No. 14-233.

[2]All claims against Dollar General Corp. were dismissed without prejudice (*see* C.A. No. 14-236 D.I. 29), therefore the motion for C.A. No. 14-236 is no longer pending.

1

idea and (2) the conclusion under step 2 of *Alice* that the asserted claims contain sufficient additional elements such that each of the claims contain an inventive concept, making them patent-eligible. (*See* D.I. 25 at 3; C.A. No. 14-235 D.I. 19 at 3)[3]

WHEREAS, on August 17, 2015, Plaintiff Execware, LLC ("Execware" or "Plaintiff") responded to the Objections (D.I. 26), arguing that Judge Burke "correctly considered and rejected the arguments raised" in Defendants' objections. (*Id.* at 1)[4]

WHEREAS, the Court has considered Defendants' Motions *de novo*, as they present case-dispositive issues, *see* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3), and has further reviewed all of the pertinent filings;

NOW THEREFORE, IT IS HEREBY ORDERED that:

1. Defendants' Objections are SUSTAINED IN PART and OVERRULED IN PART, Judge Burke's Report (D.I. 59) is ADOPTED IN PART and REJECTED IN PART, as explained below.

2. Sections I, II, and subsection III.B of the Report, which discuss pertinent background and legal standards, are ADOPTED in all respects, and Defendants' Objections are OVERRULED to the extent they challenge these sections and subsection of the Report.

3. Subsection III.A of the Report is ADOPTED in all respects, and Defendants' Objections are OVERRULED to the extent they challenge this subsection of the Report.

---

[3]All Defendants except Buy.com, Inc. joined the objections filed in C.A. No. 14-233. (*See* D.I. 25 at 1; C.A. No. 14-240 D.I. 27 at 1) The Court will address all of Defendants' objections together, since all Defendants raise similar or, in many cases, identical arguments.

[4]Despite slight differences between Buy.com's objections (C.A. No. 14-240 D.I. 27) and the other Defendants' objections (D.I. 25), Plaintiff filed substantively identical responses to both sets of objections (*see* D.I. 26; C.A. No. 14-240 D.I. 28).

Subsection A correctly determines that addressing § 101 challenges at the Rule 12(b)(6) stage is permissible. The Federal Circuit has affirmed District Courts that have granted motions filed under Rule 12 based on § 101 challenges. *See, e.g., OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1360 (Fed. Cir. 2015); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

    4.    Subsection III.F of the Report is ADOPTED IN PART to the extent that it finds claim 1 to be representative of all claims of the '139 patent. Neither Defendants nor Plaintiff object to this determination.[5] (*See* D.I. 25 at 10) The Court agrees that claim 1 is representative, as argued by Defendants. (*See* D.I. 13 at 10; D.I. 24 at 41) The Supreme Court and Federal Circuit have analyzed representative claims as part of their § 101 analyses. *See Alice*, 134 S. Ct. at 2359-60 (2014) (finding 208 claims patent-ineligible based on analysis of single, representative method claim); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (quoting with approval district court's analysis of representative claim limitations). The remainder of subsection III.F of the Report is REJECTED IN PART, because the Court does not agree that claim 1 is patent eligible based on the current record, as discussed below.

    5.    With the exception of the aforementioned sections and subsections, the remainder of the Report is REJECTED IN PART. Defendants' Objections are SUSTAINED IN PART, to the extent they challenge Judge Burke's conclusions that claim 1 is not directed to an abstract idea and that claim 1 contains an "inventive concept." *See Alice*, 134 S.Ct. at 2355. For the reasons discussed below, Defendants' Motions (C.A. No. 14-233 D.I. 8; C.A. No. 14-234 D.I. 8;

---

[5]Plaintiff did not file any objections to the Report.

C.A. No. 14-235 D.I. 9; C.A. No. 14-240 D.I. 8) are DENIED WITHOUT PREJUDICE to renew as summary judgment motions, after claim construction and discovery.

6. In *Cronos Technologies, LLC v. Expedia, Inc.*, 2015 WL 5234040, at *2 (D. Del. Sept. 8, 2015), this Court outlined "several considerations relevant to deciding a Rule 12 motion that challenges the patent eligibility of multiple patent claims based on analysis of a single representative claim."

> First, are all non-representative claims adequately represented by the representative claim (i.e., do ***all*** of the challenged claims relate to the ***same*** abstract idea and do any of the non-representative claims add one or more inventive concepts that would result in patent eligibility)? Second, are there issues of claim construction that must be decided before resolving the motion? Finally, is there ***any*** set of facts that could be proven relating to preemption, questions of patentability, or whether the claims "solve a technological problem," that would result in a determination that one or more of the claims are patent-eligible?

*Id.* (internal footnotes omitted; emphasis in original). In this case, the Report correctly determined that claim 1 is representative of all claims of the '139 patent for purposes of deciding Defendants' Motions.

7. With respect to the second *Cronos* consideration – whether there are issues of claim construction that must be decided before resolving the Motions – the Court disagrees in this case with the Report's approach of "presum[ing] that the claims are to be construed in the manner most favorable to Plaintiff." (D.I. 24 at 15 n.9) The Report correctly cites *Content Extraction*, 776 F.3d at 1349, for the proposition that "***when a Section 101 motion would be well taken*** even were a plaintiff's proposed claim construction to be accepted, a court may adopt the plaintiff's construction (or the construction most favorable to the plaintiff) for the purposes of the

4

motion." (D.I. 24 at 9) (emphasis added) However, in this case, the Report determined that Defendants' 101 Motions would *not* be well taken under a construction presumed to be most favorable to Plaintiffs and, accordingly, recommended denying the Motions. (*Id.* at 41) Therefore, the situation is significantly different from *Content Extraction*, because if the Report's recommendation were adopted, Defendants' Motions would be denied based on constructions that may turn out to be incorrectly less favorable to Defendants than the constructions that will ultimately be adopted after formal claim construction takes place.[6]

8. The ultimate question of the proper construction of a patent is a question of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)). A Court construes the claims by analyzing the claim language in light of the specification and other intrinsic evidence, including the "prosecution history, if it is in evidence." *See Markman*, 52 F.3d at 980. In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. In some cases, the meaning of claim language is clear from the face of the patent, without needing to resort to consultation of the prosecution history (which may not be in evidence at the Rule 12 stage) or extrinsic evidence (which cannot be considered at the Rule 12 stage). *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (US.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). This case does

---

[6]The Court need not decide whether the *Content Extraction* approach – that is, resolving § 101 motions prior to claim construction based on applying a patentee's preferred construction – is appropriate only when the party challenging patentability would prevail either way. Today the Court decides only that, *in the instant case*, applying Plaintiffs' presumed most favorable construction is not the approach the Court deems most appropriate for proceeding here.

not fall into the category of cases where the challenged claims are so clear on their face that formal claim construction is unnecessary.

9. Claim construction is necessary in this case before determinations can be made under either step of the *Alice* inquiry. *See* 134 S. Ct. at 2355. Under *Alice*, courts must first determine if the claims at issue are directed to a patent-ineligible concept, *see id.* – in this case, an "abstract idea." (*See* D.I. 24 at 14 n.8) If so, the next step is to look for an "inventive concept – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* (internal quotation marks omitted). Relevant to the first step of the *Alice* inquiry, the Court agrees with the Report's conclusion that "step a is the 'most important aspect' of claim 1." (D.I. 24 at 28) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015)) Thus, if claim 1 *is* directed to an abstract idea, it would most likely be an abstract idea that is substantially reflected by step a – i.e., a user interface.

10. However, in concluding that the "improved user interface" embodied by step a of claim 1 "contains sufficient particularity such that it is not directed to an abstraction," the Report relies on a construction of claim 1 that may read in limitations from the specification. (*See, e.g.*, D.I. 24 at 22) (discussing steps b and c and construing them in light most favorable to Plaintiff by "following the example set forth in Figure 3") But the Report (because it is simply presuming) does not explain why reading in limitations from the specification would be proper in construing this claim term. "We do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that. To constitute disclaimer, there must be a clear and unmistakable disclaimer." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362,

6

1366-67 (Fed. Cir. 2012).

11. In this case, the Report relied on constructions that were "most favorable to Plaintiff," but it is unclear what factual or legal determinations may be baked into these "most favorable" constructions. The Report invokes the "most favorable" standard four times in its step-1 analysis under *Alice*. Because the claim meaning is apparently uncertain enough to turn on multiple uses of this standard, and because the parties were not afforded an opportunity to explain why it may or may not be appropriate to read in limitations from the specification into certain of the steps comprising claim 1, the Court determines that formal claim construction is necessary before deciding whether claim 1 is directed to an abstract idea.

12. Regarding the third *Cronos* consideration – whether there are facts relevant to patent eligibility – the Federal Circuit has encouraged District Courts to evaluate "considerations analogous to those of [35 U.S.C.] §§ 102 and 103" as part of a "pragmatic analysis of § 101" at the motion to dismiss stage. *See Active Network*, 790 F.3d at 1347. "Courts have found guidance in deciding whether the allegedly abstract idea (or other excluded category) is indeed known, conventional, [or] routine . . . by drawing on the rules of patentability." *Id.* The Court agrees with Plaintiff that, in this case, "it is premature [to rule on § 101 eligibility] because Execware has had no opportunity to plan or take discovery on numerous factual issues embedded in the § 101 inquiry." (D.I. 10 at 6) Thus, the Court determines that any renewed motion under § 101 must be filed as a summary judgment motion only after the parties have been afforded an opportunity to take discovery related to any factual issues that may affect the § 101 inquiry.

13. The Report utilizes a "majority of the limitations" inquiry from *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014), as one of the "methods of analysis undertaken

7

by the Federal Circuit in a few of [its] recent cases." (D.I. 24 at 20) The Court agrees with Defendants' objection to use of this inquiry in the present case. (*See* D.I. 25 at 5-6) In *Ultramercial*, the Federal Circuit determined that "the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content." 772 F.3d at 715. However, in performing this analysis, the Federal Circuit was analyzing the claims at issue as an "ordered combination of steps." *Id.* In other words, the Court was analyzing the claims *as a whole* "to ascertain whether their character as a whole [was] directed to excluded subject matter." *Active Network*, 790 F.3d at 1346. In this case, as the Report correctly concluded (and as discussed, *supra* at ¶ 9), the "character as a whole" of claim 1 is clear from reading the specification (i.e., "step a is the 'most important aspect' of claim 1"), and resort to the "majority of the limitations" inquiry is unnecessary and potentially misleading, given that steps b through e of claim 1 cover database functionality that, while certainly technical, may have been "widely available" and, thus, "conventional." (*See* D.I. 24 at 3) ("[C]omputer database management systems and spreadsheet programs with data-sorting capability ha[d] been widely available[.]") (quoting '139 patent at 2:6-8)[7]

14. The Report also cites the step-1 analysis in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), as a "method of analysis" to be used in this case. This Court previously addressed the appropriateness of using *DDR Holdings* as a model for step-1 analysis in *Gammino v. Am. Tel. & Tel. Co.*, 2015 WL 5234028 (D. Del. Sept. 8, 2015):

---

[7]As the Report observes (*see* p. 28 n.18), *Active Networks* arguably uses a "different approach" than *Ultramercial III*. As the Report also correctly notes, "the law in this area is still evolving." (*Id.* at p. 29)

8

> [I]t is unclear whether *DDR Holdings* turned on an analysis under step 1 of [*Alice*]. In fact, the Federal Circuit stated in *DDR Holdings* that "[i]dentifying the precise nature of the abstract idea" there was "not as straightforward as in *Alice* or some of our other recent abstract idea cases," and the Court appeared to rely primarily on its step-2 analysis in deciding the case: "as discussed below, under any of these characterizations of the abstract idea, the [patent-in-suit]'s claims satisfy [*Alice*] step two." *Id.* at 1257. Thus, the Federal Circuit's step-1 analysis in *DDR Holdings* may have been *dicta*. In addition, to the extent *DDR Holdings* made a determination under step 1, the Federal Circuit did not precisely articulate the abstract idea to which the patent claims were directed. Therefore, Plaintiff's reliance on *DDR Holdings* for its step-1 analysis is questionable.

*Id.* at *5 (footnote omitted). In light of the uncertainty as to the significance of the step-1 analysis in *DDR Holdings*, the Court determines that the Federal Circuit's guidance in *Active Network*, 790 F.3d at 1346, provides the most useful guidance – out of the three "methods of analysis" identified in the Report – for determining whether claim 1 is directed to an abstract idea. *See also generally Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 2015 WL 5165442, at *16-18 (D. Md. Sept. 2, 2015) (analyzing whether patent claim limitation relating to user interface is directed to abstract idea under *Mayo* step 1).

15. Regarding the second step of *Alice*, the Report acknowledges that "its determination with regard to preemption is contingent here on viewing the claims in the light most favorable to the patentee. In this case, that has resulted in a narrow construction of 'query dialog box' that is limited to a 'dialog box' as described in the specification."[8] (D.I. 24 at 38 n.23) Again, the Report does not give any reasons why, when this claim term is eventually

---

[8]As the Supreme Court articulated in *Alice*, the focus of the second step of the *Alice* test is whether the claims "***disproportionately*** t[ie] up the use of the underlying ideas." 134 S.Ct. at 2354 (internal quotation marks omitted; emphasis added). This is the "preemption" concern that the Supreme Court referred to in *Alice*.

9

construed, it will be construed with limitations read into it from the specification. For the reasons already discussed, *supra*, formal claim construction, including formal construction of the term "query dialog box," is necessary before a determination can be made as to whether claim 1 includes an "inventive concept" sufficient to make it patent-eligible under step 2 of *Alice*.

16. In addition, the Court agrees with Plaintiff that the "factual issues" identified in Plaintiff's answering brief (D.I. 10 at 6) relevant to the step-2 analysis of *Alice* could be important, if not dispositive, of the patent-eligibility of claim 1. In particular, discovery must be allowed to explore facts related to, e.g., preemption, questions of patentability,[9] or whether the claims "solve a technological problem"[10] that could result in a determination that the claims are patent-eligible.

---

[9]*See Active Network*, 790 F.3d at 1347 ("Courts have found guidance in deciding whether the allegedly abstract idea (or other excluded category) is indeed known, conventional, and routine, or contains an inventive concept, by drawing on the rules of patentability.").

[10]*See Alice*, 134 S. Ct. at 2358.

Accordingly, for the reasons stated above, Defendants' Motions, all of which are based on the contention that Plaintiffs' patent is ineligible for patentability, are DENIED WITHOUT PREJUDICE to renew as summary judgment motions, after claim construction and discovery have taken place.[11]

September 30, 2015
Wilmington, Delaware

HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[11] As the motion to dismiss stage of these cases has now been completed, any renewed challenge to patentability under § 101 will proceed before Judge Stark, consistent with the referral orders entered in these cases. (*See, e.g.*, C.A. 14-233 D.I. 14)

11